OPINION *Page 2 
{¶ 1} Appellant-juvenile, Tracy Seavolt, appeals the decision of the Morrow County Court of Common Pleas, Juvenile Division, imposing a serious youthful offender dispositional sentence. Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 19, 2005, the following cases were active in the Morrow County Juvenile Court against appellant: 10557 Unruly; 10810 Possession of Drug Paraphernalia; 10812, Habitual Truancy; 10821 Unruly (Truancy); 11138 Unruly (Truancy); 11190 Unruly (Truant). He was on probation in all of these cases. As part of his probation he had been assigned to drug court. Appellant failed to appear for drug court and had failed to meet his appointments for probation. Therefore, on July 7, 2005, the Court had issued a warrant for his arrest.
 {¶ 3} Three days after the warrant to arrest was issued, July 10, 2005, appellant broke into the home of Karen Linder at 257 Douglas Street, Mt. Gilead, Ohio. He stole a cell phone. A month later, on August 9, 2005, appellant committed a Felonious Assault in the city of Mount Vernon, Ohio. Appellant remained at large on the probation violation warrant until his arrest on December 4, 2005. Appellant was also charged with resisting at the time of his arrest.
 {¶ 4} On August 19, 2005, a complaint was filed in the Knox County Juvenile Court alleging appellant was a delinquent child for committing felonious assault, a felony of the second degree if committed by an adult, in violation of R.C. 2903.11(A) (I), and a violation of the liquor control law, a misdemeanor of the first degree if committed by an adult, in violation of R.C. 4301.69(E) (1). *Page 3 
 {¶ 5} On August 25, 2005, the Morrow County Grand Jury returned an indictment alleging appellant committed the offense of burglary, a felony of the second degree if committed by an adult in violation of R.C. 2911.12(A) (2). This indictment also included a finding that appellant was eligible for a serious youthful offender disposition.
 {¶ 6} On December 4, 2005 a detention hearing was held. The Court noted that the detention was due to the warrant issued on July 7, 2005. The State informed the Court that the appellant had absconded from the jurisdiction, failed to attend court hearings, failed to report in to his probation officer, and had been charged with two felonies and a misdemeanor while on probation and said offenses had occurred after the warrant was issued. The Court ordered that the juvenile remain in detention pending further hearings on the matter.
 {¶ 7} On January 12, 2006 the court held an additional detention hearing and a dispositional hearing in Case Number 2005JD11190. The court ordered that appellant serve a period of ninety days in the juvenile detention center in that case number. [T. Change of Plea, January 12, 2006 at 10]. The court noted: "If you are entitled to credit for the time served you will get it. If, not, then you are to serve the 90 days. . . ." [Id. at 10].
 {¶ 8} On March 10, 2006, appellant admitted to one count of burglary a felony of the second degree. In exchange for this plea appellant's defense attorney negotiated the dismissal of Case No. 11443, Resisting Arrest; and Case No. 11353, Truancy.
 {¶ 9} On March 31, 2006, appellant was adjudicated delinquent of felonious assault in the Knox County Juvenile Court. Because appellant resided in Morrow *Page 4 
County, the court transferred the case to the Morrow County Juvenile Court for disposition.
 {¶ 10} On May 11, 2006, the Morrow County Juvenile Court held a disposition hearing. Appellant was committed to the Ohio Department of Youth Services for a minimum of one year and a maximum of age twenty-one for felonious assault; and for a minimum of one year and a maximum of age twenty-one for burglary. The commitments were ordered to be served concurrently. In addition, appellant also received a serious youthful offender disposition for the burglary charge. The Court ordered that appellant be given a sentence of five years in the Ohio Department of Rehabilitation and Corrections. The adult portion of appellant's sentence was suspended. The court further ordered appellant committed to the juvenile detention center for 90 days on both counts, for a total of 180 days in the detention center. At the disposition hearing, the court ordered the detention center commitment suspended. However, the entry generated as a result of the hearing stated that appellant was committed to the juvenile detention center for a total of 180 days, and ordered that he receive credit for time served. Appellant was also ordered to pay court costs and restitution.
 {¶ 11} Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 12} "I. OHIO REVISED CODE SECTION 2152.13(D) (2) (A) VIOLATES A JUVENILE'S RIGHTS TO DUE PROCESS AND TRIAL BY JURY UNDER THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 5 AND 16 OF THE OHIO CONSTITUTION BECAUSE IT AUTHORIZES A JUVENILE COURT TO IMPOSE AN ADULT SENTENCE ON A *Page 5 
JUVENILE BASED ON JUDICIAL FACT-FINDING, IN CONTRAVENTION OF BLAKELY V.WASHINGTON (2004), 542 U.S. 296.
 {¶ 13} "II. THE JUVENILE COURT ERRED WHEN IT FAILED TO MAKE THE PROPER FINDINGS TO IMPOSE A DISCRETIONARY SERIOUS YOUTHFUL OFFENDER SENTENCE UPON TRACY SEAVOLT, IN VIOLATION OF R.C. 2152.13(D)(2)(A)(I).
 {¶ 14} "III. THE JUVENILE COURT ERRED WHEN IT IMPOSED UPON TRACY SEAVOLT A COMMITMENT TO BOTH THE OHIO DEPARTMENT OF YOUTH SERVICES AND THE JUVENILE DETENTION CENTER, IN VIOLATION OF R.C. 2152.16, 2152.18(B),2929.13(F)(8), AND 2929.15(A)(1).
 {¶ 15} "IV. THE JUVENILE COURT ERRED WHEN IT FAILED TO CREDIT THE DAYS TRACY SEAVOLT WAS HELD IN THE LOGAN COUNTY AND MARION COUNTY JUVENILE DETENTION CENTERS TOWARD THE BALANCE OF HIS COMMITMENT TO THE OHIO DEPARTMENT OF YOUTH SERVICES IN VIOLATION OF R.0 2152.18(B).
 {¶ 16} "V. THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD A HEARING TO DETERMINE WHETHER TRACY SEAVOLT WAS ABLE TO PAY THE SANCTIONS IMPOSED BY THE JUVENILE COURT AND WHEN IT FAILED TO CONSIDER COMMUNITY SERVICE IN LIEU OF THE FINANCIAL SANCTION IN VIOLATION OF R.C. 2152.20.
 {¶ 17} "VI. TRACY SEAVOLT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND *Page 6 FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16
OF THE OHIO CONSTITUTION."
 I. {¶ 18} In this appeal from a serious youthful offender dispositional sentence, appellant argues that because the serious youthful offender sentence exposes a juvenile to a potentially greater sentence if convicted, he has a Sixth Amendment right to a jury determination of any fact supporting the determination under Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct.2348, 147 L.Ed.2d 435, Blakely v. Washington
(2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403 and State v.Foster, 109 Ohio St.3d. 1, 2006-Ohio-856, 845 N.E.2d 470. We disagree.
 {¶ 19} A serious youthful offender is subject to a sentence prescribed under both juvenile and adult sentencing guidelines. R.C. 2152.11 and2152.13. Due to appellant's delinquency adjudication for burglary, a second-degree felony, the imposition of the adult sentence was discretionary, not mandatory. R.C. 2152.11(F). R.C. 2152.13(D) (2) (a) governs a juvenile court's discretion to impose a blended juvenile/adult sentence on a serious youthful offender and states:
 {¶ 20} "If a child is adjudicated a delinquent child for committing an act under circumstances that allow, but do not require, the juvenile court to impose on the child a serious youthful offender dispositional sentence under section 2152.11 of the Revised Code, all of the following apply:
 {¶ 21} "(i) If the juvenile court on the record makes a finding that, given the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile *Page 7 
system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in section 2152.01 of the Revised Code will be met, the juvenile court may impose upon the child a sentence available for the violation, as if the child were an adult, under Chapter 2929 of the Revised Code, except that the juvenile court shall not impose on the child a sentence of death or life imprisonment without parole.
 {¶ 22} "(ii) If a sentence is imposed under division (D) (2) (a) (i) of this section, the juvenile court also shall impose upon the child one or more traditional juvenile dispositions under sections 2152.16,2152.19, and 2152.20 and, if applicable, section 2152.17 of the Revised Code".
 {¶ 23} Further, under R.C. 2152.13(D) (2) (a) (iii): "the juvenile court shall stay the adult portion of the serious youthful offender dispositional sentence pending the successful completion of the traditional juvenile dispositions imposed".
 {¶ 24} R.C. 2152.01, referred to in R.C. 2152.13(D) (2) (a), establishes the purposes for juvenile dispositions and states:
 {¶ 25} "(A) The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender".
 {¶ 26} Thus, R.C. 2152.13(D) (2) (a) sets out a two-tiered approach once a minor is adjudicated delinquent under circumstances that allow, but do not require, a blended juvenile/adult serious-youthful-offender sentence: (1) the court must make findings that the juvenile sentence is not adequate to meet the purposes in R.C. 2152.01, and (2) if *Page 8 
the court makes those findings, then the court may impose an adult sentence. State v. D.H., 10th Dist. No. 06AP-250,2006-Ohio-6953 at ¶ 44.
 {¶ 27} After exercising its discretion to impose a blended juvenile/adult sentence on a serious youthful offender, "[t]he juvenile court shall stay the adult portion of the serious youthful offender dispositional sentence pending the successful completion of the traditional juvenile dispositions imposed." R.C. 2152.13(D) (2) (a) (iii). However, under R.C. 2152.14(E), the juvenile court may later invoke the adult portion of a serious-youthful-offender sentence on a juvenile if, after a hearing, the juvenile court finds on record by clear and convincing evidence that (1) the juvenile is serving the juvenile portion of a serious-youthful-offender dispositional sentence and (2) the juvenile is at least 14 years of age and has been admitted to a department of youth services facility, or criminal charges are pending against the juvenile. Additionally, to invoke the adult sentence under R.C. 2152.14(E), the juvenile court must find on record by clear and convincing evidence either of the following: (1) the juvenile, after reaching 14 years of age and while in custody of a facility of the Department of Youth Services, violated rules of the facility by committing any felony or a first-degree misdemeanor offense of violence; (2) the juvenile, after reaching 14 years of age and while in custody of a facility of the Department of Youth Services, engaged in conduct that created a substantial risk to the safety or security of the facility, the community, or the victim; (3) the juvenile, while on community control or parole, violated a condition of the community control or parole by committing any felony or a first-degree misdemeanor offense of violence; or (4) the juvenile, while on community control or parole, engaged in conduct that created a substantial risk to the safety or security of the community or of the victim. Lastly, to *Page 9 
invoke the adult sentence under R.C. 2152.14(E), in addition to the above factors, the juvenile court must find that the juvenile's conduct demonstrates that he or she is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction. The juvenile court "may modify the adult sentence the court invokes to consist of any lesser prison term that could be imposed for the offense and, in addition to the prison term or in lieu of the prison term if the prison term was not mandatory, any community control sanction that the [juvenile] was eligible to receive at sentencing." R.C. 2152.14(E) (2). State v.D.H, supra at ¶ 45.
 {¶ 28} Appellant asserts that the juvenile court imposed the blended juvenile/adult sentence after making findings under R.C.2152.13(D)(2)(a) in violation of constitutional jury-trial principles and in contravention of Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403 and State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470.
 {¶ 29} This same argument was considered in In re J.B., 12th Dist. No. CA 2004-09-226, which was decided afterBlakely but before Foster. The court in In re J.B. reasoned: "[a]ppellant's right to a jury trial was not violated due to the juvenile court judge making the finding in R.C. 2152.13(D) (2) (a) (i). The sentence appellant received was derived from the jury's verdict on the murder and child endangering counts, not from any additional fact finding engaged in by the juvenile court. Pursuant to R.C. 2152.11(B) (2) and R.C. 2152.11(E) (2), appellant was subject to a serious youthful offender disposition at the discretion of the juvenile court simply by virtue of the delinquency finding for murder and child endangerment. Therefore, the range of appellant's potential punishment by virtue of the jury verdict alone included the *Page 10 
applicable adult punishment set forth in Revised Code Chapter 2929. In making the finding in R.C. 2152.13(D)(2)(a)(i), the court was determining appellant's punishment within the statutorily prescribed range, taking into account the nature and circumstances of the offense, and the security, programming, and resources available in the juvenile system. The court's consideration of those matters did not violate appellant's right to a jury trial. See State v. Combs, Butler App. No. CA2000-03-47, 2005-Ohio-1923, ¶ 59, and State v. Farley, Butler App. No. CA2004-04-085, 2005-Ohio-2367, ¶ 42 (consideration of discretionary sentencing factors by judge did not violate offender's right to jury trial where sentence imposed was within statutorily defined range for offense)". Id. at paragraph 126.
 {¶ 30} In the case of In re: Strum, the Court of Appeals for the Fourth District stated: "We find the reasoning in In re J.B. persuasive and adopt it here. Once the jury found Sturm guilty of murder, he was automatically subject to a blended sentence. The juvenile court's findings in R.C. 2152.13(D) (2)(a)(i) are merely discretionary sentencing factors to be applied to the range of punishment that was solely determined by the jury's verdict. Accordingly, we conclude that Ohio's serious youthful offender statute is not unconstitutional because the range of Sturm's punishment was determined by the jury's verdict". 4th Dist. No. 05CA35, 2006-Ohio-7101 at ¶ 74. A similar result has been reached by our brethren in the Tenth Appellate District.State v. D.H., 10th Dist. No. 06AP-250, 2006-Ohio-6953.
 {¶ 31} At least one court outside of Ohio has reached a similar result. The New Mexico Court of Appeals in State v. Gonzales (2001), 130 N.M. 341, 24 P.3d 776, 2001-NMCA-025, noted: "[w]hether ultimately given a juvenile disposition or an adult *Page 11 
sentence, every youthful offender has the constitutional right to the State's proof of every element of a criminal offense beyond a reasonable doubt. See Apprendi, 120 S.Ct. at 2366; In re Winship, 397 U.S. 358,364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). By contrast, whatever right a child may have to be treated as a child within the juvenile justice system is a statutory, not a constitutional, right. See Kent v.United States, 383 U.S. 541, 547-48, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The United States Supreme Court has drawn a clear line between the process due during an adjudication of delinquency or guilt and the lesser process due during an amenability hearing. Compare In re Winship,397 U.S. at 365, 90 S.Ct. 1068 (The same considerations that demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child.'), with Kent, 383 U.S. at 562, 86 S.Ct. 1045
(holding that amenability hearings `must measure up to the essentials of due process and fair treatment'), and Breed v. Jones, 421 U.S. 519, 537,95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (The [Supreme] Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court.'). The determination of a youthful offender's amenability to treatment within the juvenile system is a question of the prospects for rehabilitation of the child, not of the degree of a child's criminal culpability. The constitutional concerns expressed by the Supreme Court in Winship and Apprendi are satisfied by the jury's finding beyond a reasonable doubt that a child committed the offenses that form the foundation permitting the court to sentence the child as an adult.
 {¶ 32} "The second difference between the Section 32A-2-20(B) findings and the elements of a crime is in the nature of the findings. The determination of a child's *Page 12 
prospects for rehabilitation is a complicated and difficult question that requires consideration of a child's environment, age, maturity, past behavior, and predictions of future behavior as well as specifics of the offense as they relate to the prospects of rehabilitation. Unlike the finding that a child has committed a criminal offense, the finding that a child is not amenable to treatment as a child within the juvenile system requires a predictive, more than historical, analysis.
 {¶ 33} "As such, a finding of non-amenability is different in nature from the type of findings discussed in Apprendi". Id. at 348, 24 P.3d 784, 2001-NMCA-025 at ¶ 25-27.
 {¶ 34} The court in Gonzales concluded: "[w]hile a finding of non-amenability and ineligibility for commitment may expose a youthful offender to a longer period of deprivation of liberty than is possible under the Children's Code, only two factual findings are required to expose a child to the possibility of adult sentencing: (1) the child's age at the time of the offense and (2) the jury's verdict or a plea of guilty to a specifically enumerated felony or to any felony, provided it is in fact the child's fourth felony in three years . . . Therefore, at the time the child pleads or is adjudicated guilty of an offense, the range of possible sentences is fixed. In this case, the finding of non-amenability and ineligibility for commitment did not expose the Defendant to a first degree sentence for a second degree crime as was the case in Apprendi". Id. at 350, 24 P.3d at 785, 2001NMCA-025 at ¶ 31.
 {¶ 35} We find the reasoning of the above-citied cases persuasive and adopt it here. The juvenile court's findings in R.C. 2152.13(D) (2) (a) (i) are merely discretionary sentencing factors to be applied to the range of punishment that was solely determined by the appellant's plea. Unlike the finding that a child has committed a criminal offense, *Page 13 
the finding that a child is not amenable to treatment as a child within the juvenile system requires a predictive, more than historical, analysis. As such, a finding of non-amenability is different in nature from the type of findings discussed in Apprendi and Blakely. Accordingly, we conclude that Ohio's serious youthful offender statute is not unconstitutional because the range of appellant's punishment was determined by his guilty plea. Therefore we overrule appellant's first assignment of error.
 II. {¶ 36} In his second assignment of error appellant maintains that the trial court failed to make the findings required by R.C.2152.13(D)(2)(a)(i) to impose a discretionary serious youthful offender sentence upon him. We agree.
 {¶ 37} R.C. 2152.13 sets forth the procedures for sentencing a juvenile deemed a serious youthful offender. In order to impose an adult sentence pursuant to Chapter 2929 of the Revised Code, the juvenile court was required to make the following finding in R.C.2152.13(D)(2)(a)(i):
 {¶ 38} "[G]iven the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in section 2152.01 of the Revised Code will be met [.]"
 {¶ 39} If the juvenile court imposes a serious youthful offender sentence under R.C. 2152.13(D) (2) (a) (i), the court must also impose a more traditional juvenile sentence such as a sentence authorized by R.C.2152.16. See R.C. 2152.13(D) (2) (a) (ii). The juvenile court must stay the adult portion of the serious youthful offender *Page 14 
sentence pending the successful completion of the traditional juvenile sentence. See R.C. 2152.13(D) (2) (a) (iii).
 {¶ 40} The overriding purposes for juvenile dispositions, as stated in R.C. 2152.01(A), are "to provide for the care, protection, and mental and physical development of children * * *, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." That section further states that "[t]hese purposes shall be achieved by a system of graduated sanctions and services."
 {¶ 41} Additionally, R.C. 2152.01(B) states that "[dispositions * * * shall be reasonably calculated to achieve the overriding purposes set forth in this section, commensurate with and not demeaning to the seriousness of the delinquent child's * * * conduct and its impact on the victim, and consistent with dispositions for similar acts committed by similar delinquent children * * * [.]"
 {¶ 42} "The juvenile disposition statutes do not exist merely to punish children and prevent future crime [.]" In re Chappell,164 Ohio App.3d 628, 2005-Ohio-6451, ¶ 49. Nevertheless, despite the stated purposes of providing for the care, protection, and development of children, and to rehabilitate the offender, some circumstances justify substantial confinement in order to fulfill the purposes of protecting public safety and holding the offender accountable. See In re J.B., Butler App. No. CA2004-09-226, 2005-Ohio-7029, ¶ 120.
 {¶ 43} In the case at bar, the trial court had both a pre-sentence investigation report and a predisposition investigation report. (Sent. T. April 19, 2006 at 3). Pursuant to its discretion under R.C.2152.13(D)(2)(a)(i), the juvenile court decided that a serious *Page 15 
youthful offender disposition was necessary. However, the court's only statements on the record concerning its reasons for imposing an adult sentence as part of its serious youthful offender disposition are as follows: "Well, my biggest concern for you, Tracy, is that you have history here that shows that you have had some serious addictions, whether you want to acknowledge that or not. They don't go away overnight because you didn't acquire it overnight. The addiction came over years. Looks like age 11 . . . I think you need to be rehabilitated, but I don't know that we have anyplace to rehabilitate you outside of the system at this point in time. I want to re-evaluate that, but what I'm going to do given the circumstances and the severity of these cases, I think you need to be, you know, message needs to be sent to you. You lose your right to be in society when you commit serious crimes like this. Especially the one over there in Knox County as far as Mr. Hodgkinson or Hodgkinson. He was very seriously injured". (Sent. T. April 19, 2006 at 12-13).
 {¶ 44} The record in the case at bar does not establish that the court considered all of the factors in R.C. 2152.13(D) (2) (a) (i). Nor did the court consider R.C. 2151.02 which requires it to consider "the protection of the public as well as the rehabilitation of the offender."
 {¶ 45} Although the court may well have had information relative to the factors in R.C. 2152.13(D)(2)(a)(i) and R.C. 2151.02 within the pre-sentence investigation report and a predisposition investigation report, the court did not discuss the "nature and circumstances of the violation and the history of the child, the length of time, level of security, and [whether the] types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable *Page 16 
expectation that the purposes set forth in section 2152.01 of the Revised Code will be met".
 {¶ 46} Because the record indicates the court did not evaluate each of the elements contained in the statute on the record, we conclude that the disposition with respect to the serious youthful offender sentence, on the authority contained in Section 3(B) (2), Article IV of the Ohio Constitution, must be vacated and the case remanded to the trial court for consideration on the record of the appropriate factors as set forth above.
 {¶ 47} Accordingly, we sustain appellant's second assignment of error.
 III. {¶ 48} In his third assignment of error appellant maintains that the trial court erred when it imposed a commitment to both the Ohio Department of Youth Services and the juvenile detention center for both the burglary and felonious assault charges. We agree.
 {¶ 49} R.C. 2152.16 Commitment of delinquent children to custody of youth services department states, in relevant part:
 {¶ 50} "(A)(1) If a child is adjudicated a delinquent child for committing an act that would be a felony if committed by an adult, the juvenile court may commit the child to the legal custody of the department of youth services for secure confinement as follows:
 {¶ 51} "(d) If the child is adjudicated a delinquent child for committing an act that is not described in division (A) (1) (b) or (c) of this section and that would be a felony of the first or second degree if committed by an adult, for an indefinite term consisting of a *Page 17 
minimum period of one year and a maximum period not to exceed the child's attainment of twenty-one years of age".
 {¶ 52} While it is not uncommon for a court to order a commitment to the Department of Youth Services suspended upon the condition that the juvenile complete a lesser period of detention in a juvenile detention center there appears to be no authority for the court to impose two separate commitments for a single criminal offense. By imposing such a sentence on appellant, the court erased ninety days of potential credit for time served on each case which would shorten appellant's commitment to DYS on the same offenses.
 {¶ 53} Although a juvenile court is authorized to impose consecutive terms of commitment upon a delinquent minor for separate delinquent acts whether or not they arise from the same set of operative facts, we find no authority for a juvenile court to impose what in essence is a consecutive sentence of commitment for the same delinquent act. See,In re Caldwell (1996), 76 Ohio St.3d 156, 1996-Ohio-410,666 N.E.2d 1367.
 {¶ 54} Accordingly, on the authority contained in Section 3(B) (2), Article IV of the Ohio Constitution we vacate the court's disposition in both cases giving appellant 90 days in the Juvenile Detention Center.
 IV. {¶ 55} In his fourth assignment of error appellant maintains that the trial court erred when it failed to credit the days he was held pending disposition of his case towards his sentence. Appellant argues that he is entitled to pre-disposition credit for *Page 18 
time that he spent in the juvenile detention center toward the balance of his commitment to the Department of Youth Services.
 {¶ 56} Revised Code Section 2152.18(B) requires the committing court to include in its commitment entry the "total number of days that the child has been held in detention in connection with the delinquent child complaint upon which the order of commitment is based." The statute then requires the Department of Youth Services to deduct those days from the total number of days the juvenile is to be institutionalized. A youth is entitled to credit for time served in detention in connection with the delinquent child complaint for which she is incarcerated in the Department of Youth Services. This includes credit for time spent pending adjudication and disposition for the original complaint. In reThomas, 100 Ohio St.3d 89, 2003-Ohio-5162, at ¶ 13.
 {¶ 57} In the case at bar, on August 19, 2005 the appellant had several active cases in the Morrow County Juvenile Court. Of relevance to his assignment of error, appellant had pending case number 2005JU11190 [Delinquent by virtue of chronic truancy]. [T. Change of Plea, January 12, 2006 at 6]. Appellant entered an admission to that charge on March 16, 2005. [Id.]. The court requested a predisposition report be prepared and appellant was released to his mother pending disposition. [Id.]. The dispositional hearing was scheduled for April 20, 2005. [Id. at 7]. Appellant failed to appear for disposition. On July 7, 2005 an arrest warrant was issued in case number 2003JD10557. [Journal Entry, filed December 12, 2005]. In that case appellant was on probation. [Journal Entry, filed December 12, 2005]. The burglary and felonious assault charges that make up the present appeal occurred prior to appellant's arrest on the outstanding warrant. Appellant was finally arrested on the warrant on December 4, *Page 19 
2005. [Journal Entry, filed December 12, 2005]. The court ordered appellant to remain in custody pending hearings on all the outstanding complaints. [Id.].
 {¶ 58} On January 12, 2006 the court held an additional detention hearing and a dispositional hearing in Case Number 2005JD11190. The court ordered that appellant serve a period of ninety days in the juvenile detention center in that case number. [T. Change of Plea, January 12, 2006 at 10]. The court noted: "If you are entitled to credit for the time served you will get it. If, not, then you are to serve the 90 days . . .". [Id. at 10].
 {¶ 59} The Ohio Supreme Court has previously held that juveniles are to receive credit for "days that a juvenile is restricted to a facility pending adjudication or disposition of the delinquency complaint, or pending execution of a court order relating to that complaint." In reThomas, 100 Ohio St.3d 89, 2003-Ohio-5162, 796 N.E.2d 908, at syllabus. The court held that juveniles are entitled to credit in the following situations: "when the child is held at a rehabilitation or treatment facility while awaiting the final adjudication or disposition of the original delinquency complaint, when the child is held in one of those facilities after an order of commitment to DYS has been made but before the order has been executed by his or her transfer to the custody of DYS, and when the child is held in one of these facilities while awaiting the final disposition of an alleged probation violation". Id. at ¶ 13, 796 N.E.2d 908. Although the court came to this conclusion by analyzing former R.C. 2151.355, the court clearly intended its holding to also apply to the current, similarly worded statute, R.C. 2152.18. Id. at ¶ 11, fn. 1, 796 N.E.2d 908. See also In re Marlin, 3rd Dist. No. 11-04-15, 2005-Ohio-1429, at ¶ 9, fn. 1. *Page 20 
 {¶ 60} It appears that the appellant was not being held solely on the pending burglary and felonious assault complaints. Appellant was ordered to serve ninety days with credit for time served in detention on January 12, 2006 in Case No. 2005JD11190. Accordingly, appellant is not entitled to double credit, i.e. credit toward his ninety day commitment in Case No. 2005JD11190 and the same ninety day credit toward his DYS commitment. However appellant is entitled to credit for any days spent in detention after the expiration of his ninety day commitment in Case No. 2005JD11190 toward balance of his commitment to the Department of Youth Services.
 {¶ 61} Accordingly, appellant's fourth assignment of error is sustained. On the authority contained in Section 3(B) (2), Article IV of the Ohio Constitution this matter is remanded to the trial court to determine the proper amount of credit for time served to be given toward the balance of appellant's commitment to the Department of Youth Services.
 V. {¶ 62} In his fifth assignment of error appellant maintains the trial court erred in not considering community service in lieu of financial sanctions.
 {¶ 63} R.C. 2152.20 governs fines and costs in juvenile court. In parts relevant to this appeal the statute provides: "(A) If a child is adjudicated a delinquent child or a juvenile traffic offender, the court may order any of the following dispositions, in addition to any other disposition authorized or required by this chapter:
 {¶ 64} "(2) Require the child to pay costs . . .
 {¶ 65} "(3) Unless the child's delinquent act or juvenile traffic offense would be a minor misdemeanor if committed by an adult or could be disposed of by the juvenile *Page 21 
traffic violations bureau serving the court under Traffic Rule 13.1 if the court has established a juvenile traffic violations bureau, require the child to make restitution to the victim of the child's delinquent act or juvenile traffic offense or, if the victim is deceased, to a survivor of the victim in an amount based upon the victim's economic loss caused by or related to the delinquent act or juvenile traffic offense. The court may not require a child to make restitution pursuant to this division if the child's delinquent act or juvenile traffic offense would be a minor misdemeanor if committed by an adult or could be disposed of by the juvenile traffic violations bureau serving the court under Traffic Rule 13.1 if the court has established a juvenile traffic violations bureau. If the court requires restitution under this division, the restitution shall be made directly to the victim in open court or to the probation department that serves the jurisdiction or the clerk of courts on behalf of the victim.
 {¶ 66} "(C) The court may hold a hearing if necessary to determine whether a child is able to pay a sanction under this section.
 {¶ 67} "(D) If a child who is adjudicated a delinquent child is indigent, the court shall consider imposing a term of community service under division (A) of section 2152.19 of the Revised Code in lieu of imposing a financial sanction under this section. If a child who is adjudicated a delinquent child is not indigent, the court may impose a term of community service under that division in lieu of, or in addition to, imposing a financial sanction under this section. The court may order community service for an act that if committed by an adult would be a minor misdemeanor."
 {¶ 68} In In re: McClanahan, 5th Dist. No. 2004AP010004,2004-Ohio-4113 this court held "R.C. 2152.20 does not expressly forbid the trial court from imposing a *Page 22 
financial sanction in a case involving an indigent juvenile. The use of the word "may" in R.C. 2152.20(C) clearly give the trial court discretion to hold a hearing". Id. at ¶ 18.
 {¶ 69} Accordingly, the trial court is not mandated to hold a hearing before it may impose financial sanctions against an indigent juvenile. Nor does the statute mandate that the court impose community control sanctions upon an indigent juvenile; rather the statutes direct the court to "consider" imposing a community control sanction. In contrast to R.C. 2152.20(C), the language of R.C. 2152.20(D) does impose a requirement upon the trial court, obliging it to consider community service in lieu of sanctions when the child being sentenced is indigent.In re: C.P., 9th Dist. No. 04CA008535, 2005-Ohio-1819
at ¶ 15; In re Spears, 5th Dist. No. 2005-CA-93,2006-Ohio-1920 at ¶ 85.
 {¶ 70} In light of our disposition of appellant's second assignment of error vacating the serious youthful offender sentence and remanding the matter to the trial court to conduct a new hearing, appellant can move the trial court to hold a hearing before it imposes financial sanctions against him. It is within the court's discretion to hold such a hearing; however the court can consider imposing community service in lieu of sanctions when the child being sentenced is indigent.
 {¶ 71} Accordingly, appellant's fifth assignment of error is sustained in part. On the authority contained in Section 3(B) (2), Article IV of the Ohio Constitution the order of restitution is vacated and this matter is remanded to the trial court to consider imposing community service in lieu of sanctions when the child being sentenced is indigent.
 VI. {¶ 72} In his sixth assignment of error appellant argues that he was denied *Page 23 
effective assistance of trial counsel under the standard set forth inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674, and State v. Bradley (1989), 42 Ohio St.3d 136. We disagree.
 {¶ 73} Appellant's claim of ineffective assistance of trial counsel simply requires that he demonstrate two things: deficient performance by trial counsel, and prejudice from trial counsel's deficient performance. Strickland, supra at 687; Hodge v. Hurley (6th Cir 2005),426 F.3d 368, 375-76. To satisfy the performance prong, appellant must demonstrate that the representation he received "fell below an objective standard of reasonableness." Strickland at 688. Although an attorney is "strongly presumed to have rendered adequate assistance," the performance prong is satisfied if the representation at issue falls "outside the wide range of professionally competent assistance." Id. at 690.
 {¶ 74} To satisfy the prejudice prong, appellant had to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 {¶ 75} In light of our disposition of appellant's assignments of error remanding this matter to the trial court, we overrule appellant's sixth assignment of error because appellant cannot show that he was prejudiced by counsel's performance. *Page 24 
 {¶ 76} For the foregoing reasons, the judgment of the Morrow County Court of Common Pleas, Juvenile Division is affirmed in part and reversed in part and this case is remanded to the trial court for further proceedings consistent with this Opinion.
 Gwin, P.J., Farmer, J., and Edwards, J., concur. *Page 25 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Morrow County Court of Common Pleas, Juvenile Division is affirmed in part and reversed in part and this case is remanded to the trial court for further proceedings consistent with this Opinion. Costs to appellee. *Page 1